WILLIAMS *v.* JOHNSON.

ERROR TO THE SUPREME COURT OF THE STATE OF OKLAHOMA.

No. 110.  Submitted December 6, 1915.—Decided December 20, 1915.

Indians are wards of the Nation; Congress has plenary control over tribal relations and property and this power continues after the Indians are made citizens and may be exercised as to restrictions on alienation of allotments. *Tiger* v. *Western Investment Co.*, 221 U. S. 286; *Choate* v. *Trapp*, 224 U. S. 665, distinguished.

The provision in the Act of April 21, 1904, c. 33, Stat. 204, removing certain restrictions on alienation of allotments to Choctaw Indians imposed by the Act of July 1, 1902, was within the power of Congress and was not, under the Fifth Amendment, an unconstitutional deprivation of property of Indians to whom allotments had been made; nor did it impair the obligation of the contract theretofore made between the United States and the Choctaw and Chickasaw Nations in regard to allotments.

*Quære* whether the grantee of an Indian can avail of the right, if any, of the Indian to assert the unconstitutionality of an act of Congress af-

fecting the rights of the Indian, or whether such grantee can be heard to urge rights of the tribe to which his grantor belonged.
32 Oklahoma, 247, affirmed.

THE facts, which involve the title to allotted lands conveyed by a Choctaw Indian and the construction, application and constitutionality of Acts of Congress relating to the allotment of lands to Choctaw Indians and restriction of alienation thereon, are stated in the opinion.

*Mr. Eli P. Williams, Mr. Elmer Williams* and *Mr. Charles H. Williams* for plaintiffs in error *pro se:*

Private property rights are protected by the Federal Constitution.

The land involved herein is not alienable.

The Choctaw and Chickasaw nations were owners of land, and grantors in the patent that conveyed same.

When Taylor accepted the patent he was bound and so was the tribe and government.

The act of Congress of April 21, 1904, was unconstitutional so far as applied to the restriction upon Taylor.

The restrictions attached to land were not repealable. The private property rights of Taylor were secured and enforced to same extent and in same way as other residents or citizens.

The statutes of Arkansas were in force in Indian Territory and applied to the Indians.

In support of these contentions, see *Carondelet Canal Co.,* 233 U. S. 362; *Choate* v. *Trapp,* 224 U. S. 665; *Fleming* v. *McCurtain,* 215 U. S. 56; *Jones* v. *Mehan,* 175 U. S. 1; *Mallett* v. *North Carolina,* 181 U. S. 589; *Mullen* v. *United States,* 224 U. S. 448; *San Jose Land Co.* v. *San Jose Ranch Co.,* 189 U. S. 177; *Tiger* v. *Western Investment Co.,* 221 U. S. 286; *Ward* v. *Racehorse,* 163 U. S. 503.

*Mr. Reford Bond, Mr. Alger Melton* and *Mr. Adrian Melton* for defendant in error.

Mr. Justice McKenna delivered the opinion of the court.

Suit to quiet title brought by Johnson, defendant in error, in the district court of Grady County, State of Oklahoma, against plaintiffs in error.

The contention of defendant in error is that the land was an allotment to one Selin Taylor, a member of the Choctaw Tribe of Indians by blood; that on November 22, 1904, a patent was duly issued to him executed by the proper officers of that Nation and the Chickasaw Nation, and the United States, and that at the time of the allotment the land was inalienable.

On February 9, 1906, the United States Indian agent issued to Taylor a certificate (No. 2458) removing Taylor's disabilities respecting the alienation of the land and on February 16 Taylor conveyed the land by warranty deed to C. B. Campbell, and the latter and his wife, on March 13 following, conveyed the land by like deed to Johnson. The deeds were duly recorded.

On November 15, 1906, Taylor and his wife conveyed the land by warranty deed to James E. Whithead, and on October 22, 1909, Whitehead conveyed the land to one McNeill, who, on the 25th of that month, conveyed to Johnson.

Johnson's petition alleged that the claim of title of the defendants (plaintiffs in error here) was based upon a power of attorney covering the land executed by Taylor on March 11, 1907, and charged that the power of attorney constituted a cloud upon his (Johnson's) title.

The answer of the defendants admitted the allotment to Taylor and the execution of the various instruments of conveyance from him and his grantees to Johnson, and alleged that Taylor received his allotment under an act of Congress of July 1, 1902, c. 1362, 32 Stat. 641, known as an "Act to Ratify and Confirm an Agreement with the

Choctaw and Chickasaw Tribes of Indians, and for Other Purposes" and that the act was called an "agreement" and was ratified by Congress and the voters of those tribes, and was a binding contract upon the United States and the Indians of those tribes and particularly Taylor. That Taylor is not a ward of the United States and was not at the time the land was allotted, and that by an act of Congress of March 3, 1901, c. 68, 31 Stat. 1447, Taylor was made a citizen of the United States, with the rights, privileges and immunities of such.

That the Choctaw and Chickasaw Nations and not the United States are the grantors in the patent to Taylor and imposed restrictions upon him against the alienation of the land and have not consented to the removal of those restrictions. That the deeds executed by Taylor under which Johnson claimed title were in violation of such restrictions and therefore void. That the patent to Taylor was issued by authority of § 29 of the act of Congress of June 28, 1898, c. 517, 30 Stat. 495, 505, and contained the following clause: "Subject, however, to the provisions of the Act of Congress approved July 1, 1902 (32 Stat. 641)."

That Taylor and the defendants claim title to the land under that agreement and patent; that the restrictions imposed upon the alienation of the land were for the protection and benefit of the members of the tribes; that Taylor was a full-blood Choctaw Indian and a member of the Choctaw tribe, did not understand the English language, was wholly ignorant of land values, was in need of and entitled to the protection and benefit of the restrictions so imposed; and that such "protection was of great value and was to him property as much as the land itself."

That the deeds executed by Taylor to Campbell and Whitehead were in open violation of the restrictions against alienation in the act of Congress of July 1, 1902, *supra*, under which Taylor was allotted the land, and also in

violation of the restrictions upon alienation contained in the patent from the Choctaw and Chickasaw Nations to him and were executed under an unconstitutional act of Congress approved April 21, 1904, c. 1402, 33 Stat. 189, 204. That the object of that act of Congress and of the certificate to Taylor was to remove the restrictions upon the alienation of the land and that they impair the obligation of the contract or binding agreement "upon the United States and upon the Choctaw and Chickasaw Nations and upon all Choctaws and Chickasaws," and especially Selin Taylor, and are repugnant to the act of Congress under which Taylor was allotted the land, and also to the Constitution of the United States and the clause in the Fifth Amendment thereof which provides that no person shall be deprived of his property without due process of law. A cancellation of the deeds was prayed, the annulment of the interest of Johnson in the land and the rents thereof, and judgment for the possession of the land.

A demurrer to the answer was sustained and, defendants (plaintiffs in error) declining to plead further, a decree was entered quieting Johnson's title to the land. Upon appeal the judgment was sustained by the Supreme Court of the State and error was prosecuted from this court.

The record presents the general question, Was the land alienable by Taylor? This depends upon the validity of certificate No. 2458 issued to Taylor and that again on the validity of the act of Congress of April 21, 1904 (33 Stat. 204). This act removed the restrictions imposed by the act of July 1, 1902, upon allottees of either of the Five Civilized Tribes who were not of Indian blood and provided for the removal by the Secretary of the Interior of all restrictions upon the alienation of all other allottees of said tribes (with certain exceptions) upon application to the Indian agent in charge of such tribes, if the agent was satisfied upon full investigation of each individual

case that the removal of restrictions was for the interest of the allottee.

The certificate shows that the application was made by Taylor, and yet plaintiffs in error assert the invalidity of both certificate and act because they are, it is contended, repugnant to the act of Congress of July 1, 1902 (32 Stat. 641), which, it is contended, constituted a contract between the United States and the Choctaw and Chickasaw Nations and all Choctaws and Chickasaws; that the restriction upon alienation was a protection to Taylor "against his own improvident acts," that it was "not a personal privilege and repealable," but was "an incident attached to the land itself," and "was to him property as much as the land itself."

The act of July 1, 1902, is entitled "An Act to Ratify and Confirm an Agreement with the Choctaw and Chickasaw Tribes of Indians, and for Other Purposes." It recites that "in consideration of the mutual undertakings here contained, it is agreed" that (§ 16, p. 643) all land shall be alienable after issue of patent in certain quantities and at certain times "provided that such land shall not be alienable by the allottee or his heirs at any time before the expiration of the Choctaw and Chickasaw tribal governments for less than its appraised value;" that (§ 68, p. 656) "no act of Congress or treaty provision, nor any provision of the Atoka agreement, inconsistent with this agreement, shall be in force in said Choctaw and Chickasaw Nations," and, further (§ 73, p. 657), that "this agreement shall be binding upon the United States and upon the Choctaw and Chickasaw Nations and all the Choctaws and Chickasaws, when ratified by Congress and by a majority of the whole number of votes cast by the legal voters of the Choctaw and Chickasaw Tribes in the manner following: . . . ."

It is conceded by plaintiffs in error that an act of Congress can supersede a prior treaty, but they insist that it is

well settled "that Congress is without power to change a contract or agreement for a valuable consideration with an individual Indian allottee." *Choate* v. *Trapp*, 224 U. S. 665, and *Jones* v. *Meehan*, 175 U. S. 1, are cited, and incidentally *Tiger* v. *Western Investment Co.*, 221 U. S. 286, and *Mullen* v. *United States*, 224 U. S. 448.

The cases do not apply. It has often been decided that the Indians are wards of the Nation and that Congress has plenary control over tribal relations and property and that this power continues after the Indians are made citizens, and may be exercised as to restrictions upon alienation. *Tiger* v. *Western Investment Co.*, *supra.* Against this ruling *Choate* v. *Trapp* does not militate. In the latter case it was decided that taxation could not be imposed upon allotted land a patent to which was issued under an act of Congress containing a provision "that the land should be non-taxable" for a limited time; and, excluding the application of the *Tiger Case*, it was said, p. 673, that exemption from taxation "and non-alienability were two separate and distinct objects." And further, "One conveyed a right and the other imposed a limitation." The power to do the latter was declared, and it was said "the right to remove the restriction [limitation upon alienation] was in pursuance of the power under which Congress could legislate as to the status of the ward and lengthen or shorten the period of disability. But the provision that the land should be non-taxable was a property right, which Congress undoubtedly had the power to grant. That right fully vested in the Indians and was binding upon Oklahoma."

*Jones* v. *Meehan*, *supra*, is an instance of the same principle and is not opposed to the power of Congress to remove restrictions upon alienation. And there is nothing antagonistic to the cited cases in *Mullen* v. *United States*, *supra*.

A question was intimated in the *Tiger Case* whether a

grantee of an Indian could avail himself of the Indian's right, if he had any, to assert the unconstitutionality of an act of Congress, and it is still more questionable whether plaintiff in error can be heard to urge the rights of the Choctaw and Chickasaw Nations. However, we may reserve opinion. Those nations are not parties to this suit and no contract rights of Taylor have been violated.

*Judgment affirmed.*