## MERCHANTS' & PLANTERS' NAT. BANK et al. v. FORD.

No. 14338—Opinion Filed Nov. 27, 1923.

1. **Indians — Inherited Interest in Full-Blood's Allotment — Nonliability for Debts.**

The interest of a full-blood heir in the allotment of his deceased full-blood mother cannot be taken and sold under execution for the satisfaction of a debt, notwithstanding that the Secretary of the Interior, at a time long previous to the date of the inheritance of the land by said Indian, had removed restrictions upon alienation of the allotment of the said full-blood heir.

2. **Same—Conveyance by Full-Blood Heir —Approval.**

Under the act of May 27, 1908, no conveyance of any interest of any full-blood Indian heir in inherited lands is valid, unless approved by the court having jurisdiction of the settlement of the estate of the deceased allottee, from whom he inherited it.

3. **Same—Approval by Secretary of Interior.**

After the act of May 27, 1908, became effective, the Secretary of the Interior had no authority to approve conveyances of full-blood inherited Indian lands.

4. **Same—Judgment Lien.**

The fact that a judgment was rendered against the full-blood Indian heir of the land, sought to be subjected to the payment of said judgment, does not constitute a lien upon said inherited land of said full-blood heir, as such lands so inherited are not subject to involuntary alienation of said heir under an execution sale

**5. Same—Conveyance—Validity.**

In this case it is held that the deed from the full-blood Indian heir to the inherited lands, which was properly executed and approved by the county court, conveyed the interest of said heir in the inherited lands to the plaintiff in this action.

**6. Same.**

The federal statute provides but one way to obtain a valid conveyance from a full-blood Indian heir of inherited lands, and that is by voluntary conveyance approved by the county court.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Pontotoc County; J. W. Bolen, Judge.

Action by R. P. Ford against the Merchants' & Planters' National Bank of Ada, Okla., et al. Judgment for plaintiff. Defendants bring error. Affirmed.

B. C. King, for plaintiffs in error.

H. West, for defendant in error.

Opinion by THOMPSON, C. This action was begun in the district court of Pontotoc county, Okla., by R. P. Ford, defendant in error, as plaintiff below, to enjoin the sheriff of Pontotoc county, Okla., from selling a one-fifth interest in inherited lands, described in his petition, under and by virtue of an execution issued out of the district court of Pontotoc county, Okla., to satisfy a judgment in the district court of Pontotoc county, Okla., against Jimpson Carney, a full-blood Chickasaw Indian, his grantor, for the sum of $2,637 in favor of the Merchants' & Planters' National Bank of Ada, Okla., one of the plaintiffs in error, a defendant below.

Parties will be referred to as plaintiff and defendants, as they appeared in the lower court.

Plaintiff alleges that he bought the interest of Jimpson Carney, on the 27th day of July, 1922, in the lands involved in this case, and his deed thereto was duly approved by the county court of Pontotoc county, Okla., that Jimpson Carney, his grantor and judgment debtor of defendant, is a full-blood Chickasaw Indian; that he inherited a one-fifth interest in the lands from his full-blood Chickasaw mother, Lottie Carney, who died in April, 1922, and that said land was allotted to his mother, Lottie Carney, as an enrolled full-blood Chickasaw Indian.

The defendants answered the petition for injunction, not denying that Jimpson Carney was a full-blood Indian heir of Lottie Carney, deceased, but alleging that the Secretary of the Interior, on the 12th day of October, 1916, removed the restrictions on the alienation on all of Jimpson Carney's land, and that defendant had obtained judgment against Jimpson Carney for $2,637, on September 19, 1921, which judgment was sought to be collected by execution and sale of the interest of Jimpson Carney in the lands inherited from his mother and that said judgment was a good, valid, and subsisting lien upon this real estate at the time the same was purchased by the plaintiff and was subject to execution and sale for the satisfaction of the judgment debt.

The order of the Secretary of the Interior, removing the restrictions, is as follows:

"Office of Indian Affairs Received Sept. 13, 1916, 5 Civ. Tribes.

"Enclosure to Dept. No. 6790.
"Order for Removal of Restrictions

"Department of the Interior.
"JBM
"Washington, D. C. Oct. 12, 1916.
"Number 13491.
"Roll Number 420 full blood,

"Whereas, Jimpson Carney a citizen of the Chickasaw Nation, was allotted certain land, which land is restricted against alienation.

"Now therefore, I, under the authority vested in me by the act of Congress approved May 28, 1908 (35 Stat. L. 312), and the regulations of the Department prescribed thereunder, hereby remove, without conditions concerning terms of sale and disposal of proceeds, the restrictions on alienation of all the restricted lands of said Indian allottee, such removal of restrictions to be effective thirty days from date hereof.

"Alexander T. Vogelsling
"Acting Secretary of the Interior,

"Jimpson Carney is 29 years old and is enrolled as a full-blood Chickasaw Roll No. 420. Dated Aug. 21st, 1916, J. C. W."

The plaintiff demurred to the answer of defendants on the ground that the answer does not state facts sufficient in law to constitute a defense to the petition in injunction filed herein, which demurrer was by the court sustained, and defendants reserved exception and elected to stand upon their answer, and the cause comes regularly upon appeal to this court from the judgment of the trial court sustaining the demurrer and granting the relief prayed for in the petition.

The sole and only question to be decided here is a question of law whether the judgment debt obtained by the defendant Merchants' & Planters National Bank of Ada, Okla., on the 19th day of September, 1921, was a lien upon the one-fifth interest inherited by

plaintiff's grantor, Jimpson Carney, a full-blood Chickasaw Indian, of the allotment of his full-blood deceased mother, and could the same be levied upon and sold for the satisfaction of said judgment debt, after the same had been conveyed by deed to the plaintiff herein, on the 27th day of July, 1922, which deed had been duly approved by the county court of Pontotoc county, Okla., the court having jurisdiction over the estate of the deceased allottee.

It is our opinion that this one-fifth interest of this full-blood heir in the allotment of his deceased full-blood mother could not be taken and sold for the satisfaction of a debt, notwithstanding that the Secretary of the Interior, on the 12th day of October, 1916, had issued his order, removing restrictions, "without conditions concerning terms of sale and disposal of proceeds on alienation of all the restricted lands of said Indian allottee." We do not think that this removal of restrictions applied to lands involved in this action for the reason that the said order of removal recites:

"Whereas, Jimpson Carney, a citizen of the Chickasaw Nation, was allotted certain lands, which land is restricted against alienation."

And we, therefore, conclude from the language of the order itself that it only referred to the certain lands allotted to Jimpson Carney, and we do not think it applied for the further reason that this land could not have been in the contemplation or under consideration by the Secretary of the Interior on the 12th day of October, 1916, when it is shown by the record that he became an heir to this one-fifth interest upon the death of his mother, which occurred in April, 1922.

There is another and stronger reason why we are of the opinion that this land could not be taken and sold at forced sale under execution to satisfy judgment, for the reason that the act of Congress of April 26, 1906, provided:

"All conveyances made under this provision by heirs, who are full-blood Indians, are to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe"

—which act was amended by the act of Congress of May 27, 1908, in the following language:

"Provided, that no conveyance of any interest of any full-blood Indian heir in such lands shall be valid unless approved by the court having jurisdiction of the settlement of the estate of the said deceased allottee"

—thereby substituting the "court" for the "Secretary of the Interior," as the authority to approve such conveyances.

This court, in the case of Hope v. Foley, 57 Okla. 513, 157 Pac. 727, held:

"After the act of May 27, 1908, became effective, the Secretary of the Interior had no authority to approve conveyances of full-blood inherited Indian lands."

This court, in the case of Marcy v. Board of Commissioners, 45 Okla. 1, 144 Pac. 611, held that:

"The power to tax inherited Indian land is coincident with and dependent upon the removal of restrictions upon alienation; and, prior to the approval of conveyances of full-blood Indian heirs under the provisions of said act by the proper court, the power to tax said lands does not exist."

And, in the body of the same opinion, the court held:

"It is clear that the power of the state to tax the lands in question is coincident with and dependent upon the unrestricted right of the owner to sell the same.***The former cannot exist without the latter."

In the case of Choctaw Lumber Co. v. Coleman et al., 56 Okla. 377, 156 Pac. 222, this court held:

"The law of the instant case, it seems, has been settled beyond controversy against the holding of the trial court. The reasons for the holding are fully set out in the above cases, and it is not necessary to repeat them here. The fact that the judgment in the instant case was rendered against the heirs, as well as the allottee, of the land cannot affect the answer returned to the question. The lands involved were not subject to voluntary alienation of the allottee or his heirs, and were not subject to involuntary alienation of the allottee or his heirs under the execution sale. The sheriff's deed conveyed no title to this land and the deeds from the heirs, since it appears that they were all adults and that their deeds were properly executed and approved by the court, and that full consideration was paid therefore, conveyed the title of the allotment to the plaintiff in error."

The Supreme Court of the United States, in the case of Simmons v. Mullins, Sheriff of Johnston County, 234 U. S. 192, which case was appealed from the Supreme Court of the state of Oklahoma, and a case very similar to the instant case, where land was sought to be sold under execution for the satisfaction of a judgment, held that said lands could not be sold except as provided in the act of Congress, and this court, in the case of Sampson et al. v. Stapleton, 55 Okla. 547, 155 Pac. 213, said:

"This act does not reimpose restrictions (United States v. Bartlett et al., 235 U. S. 72, 35 Sup. Ct. 14, 59 L. Ed. 137) ; but it does require the conveyance of inherited

lands by full-blood Indian heirs to be approved by the county court. In other words, the county court is substituted in lieu of the Secretary of the Interior."

This court again, in the case of Tidal Oil Co. v. Flannagan, 87 Okla. 231, 209 Pac. 729, held:

"A conveyance of allotted restricted Indian lands made in violation of a federal statute authorizing the alienation of such lands is against public policy and absolutely void, and in no manner can any right, title, or interest in such lands be acquired under such a conveyance."

This court again, in the case of Carson v. French et al., 45 Okla. 819, 147 Pac. 319, in construing the act of April, 21, 1904, on the removal of restrictions of allottees not of Indian blood held that said act—

"should be construed to authorize voluntary alienations only, as distinguished from involuntary or enforced incumbrances, sales, or takings, such as are referred to in the first part of section 14 of the above act."

From all the above authorities it is very clear to this court that the act of the Secretary of the Interior, removing restrictions upon the alienation of the lands of Jimpson Carney, on October 12. 1916, had nothing to do with the question of how the lands, inherited by him from his Indian mother in 1922, could be disposed of by him, and the fact that the Secretary of the Interior, under one provision of the act of 1908, still had power to remove restrictions had nothing to do with the other section of the act, providing for the sale or disposition of the inherited land of a full-blood Indian heir. The rule of construction is that where it is possible, the courts must give force and effect to all sections of a legislative act, and there is no conflict between the two sections of this act, and it is clear to this court that the lands of Jimpson Carney, inherited by him as a full-blood Indian heir, could not be taken under execution and sold at forced sale for the satisfaction of a judgment obtained by the defendant in this action: that there is but one way to acquire title to inherited Indian lands from a full-blood Indian heir and that way is pointed out by the federal statutes and the method pointed out is exclusive, and that is, that it must be by voluntary conveyance, approved by the county court, and the plaintiff in this case, having obtained that kind of title and having complied with the statutory requirements, obtained title that is good against the defendant as judgment creditor in this action.

We are, therefore, of the opinion that the judgment of the trial court is correct, and the judgment should be and is hereby affirmed.

By the Court: It is so ordered.