**MILLER, Adm'r, v. TIDAL OIL CO.**

No. 13244—Opinion Filed Jan. 9, 1925.

Rehearing Denied March 3, 1925.

### Indians—Conveyances of Restricted Land—Invalidity.

A conveyance of allotted restricted Indian lands made in violation of a federal statute authorizing the alienation of such lands is against public policy and absolutely void, and in no manner can any right, title, or interest in such lands be acquired under such a conveyance.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Tulsa County; Owen Owen, Judge.

Action by Walton J. Miller, as administrator of the estate of Robert Marshall, deceased, against the Tidal Oil Company. From a judgment in favor of the defendant, plaintiff brings error. Reversed and remanded.

Kleinschmidt & Johnson, for plaintiff in error.

W. P. McGinnis, Y. P. Broome, and J. C. Wilhoit, for defendant in error.

Opinion by PINKHAM, C. This is an action instituted in the district court of Tulsa county on the 18th day of January, 1918, by the plaintiff, Robert Marshall, against the defendant, Tidal Oil Company, to recover the value of the oil and gas alleged in plaintiff's petition to have been wrongfully taken by the defendant from the allotment of the plaintiff during the period of time from July 12, 1915, to October 13, 1916.

The defendant, Tidal Oil Company, filed in said cause its answer to plaintiff's petition, admitting that the plaintiff is a citizen of the Creek Nation, and duly enrolled as a Creek freedman, and that as such citizen there was allotted to him the lands described in his petition, and that patents were issued therefor, and that the plaintiff is now of full age, and denies all other allegations in said petition contained.

The record discloses that thereafter, on the 26th day of September, 1919, the plaintiff, Robert Marshall, died intestate, and that one Walton J. Miller was, on the 17th day of January, 1920, duly appointed administrator of the estate of Robert Marshall, deceased.

There was filed in said cause a stipulation for a revivor of said cause in the name of the administrator, Walton J. Miller, and on the same day the district court of Tulsa county made an order reviving the same in the name of said Walton J. Miller, as administrator of the estate of Robert Marshall, deceased, as plaintiff, against the said defendant, Tidal Oil Company.

On the 22nd day of April, 1920, the said plaintiff Walton J. Miller, as such administrator, filed in said cause his reply to the answer of the defendant.

The cause came on for trial on the 1st day of October, 1920. After the plaintiff had introduced his evidence and rested, the defendant demurred to the same upon the ground that the evidence was wholly insufficient to constitute a cause of action, and asked for a judgment in favor of the defendant, which demurrer was sustained, and judgment rendered in favor of defendant, to which ruling of the court plaintiff then and there excepted, and gave notice of appeal to this court.

A number of assignments of error are set out in the petition in error and in the brief of the plaintiff, all of which may be considered under the proposition: That the court erred in sustaining defendant's demurrer to plaintiff's evidence.

There is substantially no dispute as to the facts before the trial court at the conclusion of plaintiff's evidence. A conflict arises as to the law applicable to the facts.

From an examination of the various instruments attached to the pleadings, which appear to have been presented to and con-

sidered by the court, and from the statements and admissions of the parties, it appears that on October 29, 1909, on an application to the district court of Creek county, the rights of majority were conferred on Robert Marshall, after which he executed a warranty deed to 120 acres of his allotted lands to E. M. Arnold, W. W. Hyams, and S. C. Lawson, and that at that time Robert Marshall was a minor citizen of the Creek tribe of Indians, and that said lands were a portion of his allotted lands; that on October 27, 1909, Robert Marshall executed and delivered to Arnold and his associates an option to sell and convey a certain other portion of his allotment.

That on May 16, 1910, Robert Marshall, by his next friend and guardian, brought suit in the district court of Creek county against Arnold and his associates to recover possession of said lands so conveyed by him to them and to have the said deed and his option contract canceled and set aside on the ground that he was a minor at the time of the execution of the said deed and option.

That after a trial was had of said cause, and on May 16, 1910, the district court rendered a judgment in said cause finding the issues therein against Robert Marshall and in favor of said Arnold and associates, and adjudging said option to be a valid and binding contract, and that Arnold and associates had good title in said lands by virtue of said deed of October 25, 1909.

That on the 8th day of November, 1911, Robert Marshall, by his next friend and guardian, filed his motion to vacate and set aside the said judgment, and on the 30th day of June, 1913, the said motion was by the district court of Creek county denied.

On May 31, 1910, said Arnold, Hyams, and Lawson executed and delivered to the Orient Oil & Gas Company an oil and gas mining lease covering a certain portion of said allotment, and on the same day delivered to the Arkansas Oil & Gas Company an oil and gas mining lease covering another portion of said allotment.

The said lessees went into possession of the said land under said leases.

The said E. M. Arnold, prior to June 30, 1913, purchased from Hyams and Lawson their interest in said land acquired under the deed of October 25, 1909, and obtained their deeds of conveyance to and interest, title, and estate in and to said lands.

On June 30, 1913, the day on which the

motion to vacate and set aside the said judgment was denied, the said E. M. Arnold, by way of compromise of said judgment, entered into an agreement with one James Harris, who was then and there the guardian of Robert Marshall, by which the said Arnold agreed to reconvey said lands to the plaintiff, and to pay all taxes which had accrued thereon and on behalf of said Robert Marshall agreed to accept said conveyance and payment of taxes thereon and that the oil and gas leases which had theretofore been executed upon said land by Arnold, Hyams, and Lawson, to the Orient Oil & Gas Company and the Arkansas Oil and Gas Company were recognized to be valid and binding leases, and that said lessees or their assigns might continue to operate said lands for oil and gas under the terms of said oil and gas leases, and further agreed that three-fourths of the oil reserved under said oil and gas leases should be paid to the said Arnold and one-fourth should be paid to Robert Marshall; that said agreement was made and entered into with the approval of the county court of Creek county.

Said land was, pursuant to such agreement, reconveyed to Robert Marshall by a deed executed June 30, 1913, by the said E. M. Arnold and his wife; that on July 12, 1916, the Orient Oil & Gas Company executed and delivered to the Tidal Oil Company, defendant herein, its assignment of said leases conveying a part of Robert Marshall's allotment, and on August 1, 1915, the Arkansas Oil & Gas Company executed and delivered to the defendant, Tidal Oil Company, its asignment of its lease conveying the other portion of Robert Marshall's allotment.

The defendant contends in its brief that the plaintiff having admitted the rendition of the judgment of May 16, 1910, by the district court of Creek county, whereby title to the property was quieted in Arnold, Hyams, and Lawson against the claims of Robert Marshall, such admission precludes recovery by plaintiff in this case. And the further contention is that the judgment of the county court of Creek county, approving the settlement agreement between the guardian of Robert Marshall and the said E. M. Arnold was a valid order, and therefore plaintiff is precluded from maintaining this action to recover as conversion for the oil and gas produced from said land under the leases adopted and recognized by the said settlement agreement.

It is sufficient to say that when Arnold, Hyams, and Lawson, on October 25, 1909,

obtained from Robert Marshall 120 acres of his allotted lands, Robert Marshall was a minor, duly enrolled as a Creek freedman, and that his lands could not by him be alienated or disposed of during his said minority, and the compromise agreement between the guardian of Robert Marshall and E. M. Arnold, which was approved by the county court of Creek county was, in our opinion, void, for the reason that the compromise was based upon the void judgment of the district court of Creek county, quieting title in Arnold.

It is evident that the entire transaction had its inception in the violation of a positive federal statute, and the approval by the county court of the compromise in a manner not in accordance with the state statutes could imaprt no validity or binding force to such compromise attempted to be made by the settlement.

Nearly the identical proposition contended for by defendant was passed upon adversely by this court in the case of Tidal Oil Co. v. Flanagan, 87 Okla. 231, 209 Pac. 729, where it is said in the opinion:

"Counsel for the plaintiff in error very earnestly insist that although the judgment of the district court of Creek county quieting the title to the lands in Arnold, Hyams, and Lawson be void, this fact does not invalidate the compromise settlements between the guardian of Robert Marshall and Arnold approved by the probate court of Creek county. * * * The guardian of Marshall, and Arnold, Hyams, and Lawson, in entering into the compromise agreements, were attempting to make agreements conveying an interest in restricted allotted Indian lands. Such lands may not be conveyed or title acquired except in the manner prescribed by law."

The main questions submitted by counsel for defendant in their brief were considered and disposed of in Tidal Oil Co. v. Flanagan, in which case it appears that the same instruments relied upon by the defendant and pleaded in its answer were by this court held absolutely void.

"A conveyance of allotted restricted Indian lands made in violation of a federal statute authorizing the alienation of such lands is against public policy and absolutely void and in no manner can any right, title, or interest in such lands be acquired in such a conveyance." Tidal Oil Co. v. Flanagan, supra.

"A test applied to a demurrer to the evidence is that all the facts which the evidence in the slightest degree tends to prove and all inferences or conclusions which may be reasonable and logically drawn from the evidence are admitted. The court cannot weigh conflicting evidence but it must treat the evidence drawn which is most favorable to the demurrant." Rose v. Woldert Groc. Co., 54 Okla. 566, 154 Pac. 531.

It has been the uniform holding of this court that the minority imposed upon Indian allottees within the age prescribed in section 2 of the Act of Congress of May 27, 1908, 35 Stat. L. 312, is in the nature of a restriction on the alienation of such allottees' lands, and title can only be acquired to such lands by regular probate proceeding had in accordance with the statutes in the proper county court of the state. Any deed, instrument, or contract by which an interest in such lands is attempted to be conveyed not executed in accordance with the law authorizing such conveyances is in violation of the law, and therefore contrary to public policy, and absolutely void and ineffectual as a basis of title by estoppel or otherwise. Tidal Oil Co. v. Flanagan, supra, and cases cited.

In the case of Goodrum v. Buffalo, 162 Fed. 817, 89 C. C. A. 525, the Circuit Court of Appeals for the Eighth Circuit held:

"That any and all schemes and devices resorted to for the purpose of acquiring title to the Indian allotments during the period of such limitation are abortive, and this for the palpable reason that it is a period of absolute disability, on the part of the Indian, to alienate his lands."

For the reasons stated, we think the court erred in sustaining the demurrer to the defendant to the plaintiff's evidence, and that the judgment of the trial court should be reversed and remanded for a new trial.

By the Court: It is so ordered.

Note.—See under (1) 31 C. J. p. 519.