### BILBY et al. v. MALONE et al.

No. 17696. Opinion Filed April 17, 1928.

(Syllabus.)

**Indians—District Courts Without Jurisdiction to Divest Indian of Inherited Restricted Land on Conveyance Executed in Violation of Federal Statute.**

The district or superior courts of this state are without jurisdiction to enter a valid judgment divesting a full-blood Indian of title to inherited allotted restricted Indian lands by entering a decree quieting title in a party asserting title to such lands under void conveyance executed in viola-

tion of a federal statute prescribing the manner by which title may be acquired in such lands.

Commissioners' Opinion, Division No. 1.

Error from District Court, Tulsa County; Z. I. J. Holt, Judge.

Action by Lydia Malone and Alex Scott against Russell I. Bilby and Nicholas V. Bilby to establish title to certain real estate, recover rents thereon, and for partition. Judgment for plaintiffs. and defendants Bilby appeal. Affirmed.

Robson & Moreland, for plaintiffs in error.

J. S. Severson, for defendants in error.

LEACH, C. This is an appeal by Russell I. Bilby and Nicholas V. Bilby, defendants below, from a judgment entered in the district court of Tulsa county in favor of Lydia Malone and Alex Scott, plaintiffs below, wherein the plaintiffs were adjudged to be the owners of a two-thirds interest in certain lands, the subject of the action, and decree was entered partitioning the lands between the parties plaintiff and defendant.

The facts necessary to an understanding of the case, which facts appear to be agreed upon by all parties, are in substance: Wilson McKellop, a full-blood Creek Indian, died, intestate, without issue, in 1901. Subsequent to his death there was selected for him and allotted to his heirs the land involved in this action, under the Arkansas statutes which were in effect in the Territory at that time; title to the lands vested in Peter McKellop and Betsy McKellop, father and mother of the deceased, to each an undivided one-half interest.

On August 28, 1907, Peter McKellop, the father of the deceased allottee, died intestate, leaving surviving him his wife, Betsy McKellop, and his children, Lydia McKellop, plaintiff in this action, and Louisa McKellop, and 'a posthumous child, Peter McKellop, Jr. On December 5, 1917, Louisa McKellop died intestate and without issue, and Peter McKellop, Jr., died intestate, without issue, prior to January 1, 1916. In February, 1918, Betsy McKellop died intestate, leaving as her sole and only heirs, her daughter, Lydia McKellop, now Malone, and Alex Scott, a son by a former marriage, plaintiffs in this action. Each and all of said named were full-blood Creek Indians. In July and August, 1907, Peter McKellop and Betsy McKellop, father and mother of the allottee, executed certain deeds purporting to convey to Coweta Realty Company the lands in question, which deeds were not approved in the manner provided for in acts of Congress relating to conveyance in such case.

Thereafter, the Coweta Realty Company executed to John S. Bilby a quitclaim deed to the said lands; that on the 21st day of January, 1924, the said Betsy McKellop executed and delivered to Lydia McKellop, now Malone, plaintiff herein, and her other daughter, Louisa McKellop, now deceased, a deed conveying to each of them an undivided one-third interest of all her interest in said lands, which conveyance was duly approved by the county court of Wagoner county, Okla., the court having jurisdiction of the settlement of the estate of the said Wilson McKellop, deceased; that on October 14, 1915, the superior court of Tulsa county, Okla., in an action wherein Lydia McKellop, now Malone, Louisa McKellop, and Peter McKellop, Jr., by their guardian, and Betsy Sugar, former Betsy McKellop, were plaintiffs and John S. Bilby, defendant, the same being a suit in effect, to set aside and hold void the certain conveyance describing the land in question executed by Peter McKellop and Betsy McKellop to Coweta Realty Company and to regain possession of the lands from defendant Bilby, and for rents thereon, did render a judgment in favor of the defendant therein, Bilby, directing the defendant to pay the plaintiffs, Lydia McKellop, Louisa McKellop, and Betsy McKellop, certain sums as a balance found due on the purchase and sale price of the land, which sum was paid and the conveyances executed by Peter McKellop and Betsy McKellop to the Coweta Realty Company were held valid, and title to the lands quieted in the defendant John S. Bilby, and the plaintiffs were denied possession thereof, from which judgment no appeal was taken. Thereafter, John S. Bilby deeded the land in question to the defendants named in this action.

The plaintiffs and defendants in the instant case, the one now before us, are the same, or heirs, privies, and grantees, of the parties in the former action in the superior court of Tulsa county. It is conceded by the plaintiffs in this action that Lydia McKellop and Louisa McKellop were the owners of a one-third interest in the land in question, which they acquired under proper approved deed from their mother, Betsy McKellop, in addition to the interest they inherited from their father, at the time and date of the judgment rendered in the former action in the superior court of Tulsa county; that the judgment there and in that action, to the extent of a one-third interest in the land, was binding and valid upon such plaintiffs, and in the present action they do not deny or seek to recover such interest. The facts in this case are agreed upon, and the question arises upon a proper application

of the law thereto. In the trial court, the defendants, and as plaintiffs in error here, contend that the present action cannot be maintained for the reason the questions involved are res judicata, the same having been litigated and decided by the superior court of Tulsa county. Plaintiff in error sets up six specifications of error which are presented under the proposition in brief as follows:

"We feel that the trial court erred in not applying the following rule of law to this case: 'The issues involved in this action have been litigated and adjudicated between the parties hereto, and their privies, in a court of competent jurisdiction, and cannot now be litigated in this court.'"

Plaintiffs in error rely principally upon the case of Berry v. Winstock, 102 Okla. 187, 228 Pac. 948, to support them in this cause. While there are some statements and expressions in that case that tend to support plaintiffs in error, yet from an examination of the entire case and the facts therein, we do not consider the decision in that action controlling here, or to lay down a different rule from that in a number of other decisions in the court. In that case, Berry v. Winstock, supra, the facts were that in a previous action between the same parties, which action involved the validity of a guardian sale of Indian lands, which former action was appealed to the Supreme Court, the court held the proceedings sufficient and the sale valid. In the last action, 102 Okla. 187, supra, the court decided and held that the former action was a bar to the latter, and that the plea of res judicata in the latter action was good. It would appear that the court had jurisdiction of the subject-matter and parties, and a right to determine the validity of such guardian sale.

The question in this cause is whether the superior court of Tulsa county had jurisdiction and authority to render the judgment decreeing the conveyance made by the heirs of the allottee valid without the approval of the Secretary of the Interior or county court having jurisdiction of the settlement of the estate of such deceased allottee. If the superior court did not have jurisdiction, the judgment is void, and the plea of res judicata in the present action cannot be sustained.

In the case of McLish v. White, 97 Okla. 150, 223 Pac. 348, it was said:

"Where the heirs of a member of either of the Five Civilized Tribes of Indians are full-blood Indians, title to lands allotted to such member and inherited by such full-blood Indian heirs, where such member dies subsequent to the Act of Congress, April 26, 1906, can be acquired only by procuring a conveyance of the lands from such heirs and having the same approved by the Secretary of the Interior, prior to the Act of May 27, 1908, and thereafter by the county court having jurisdiction of the settlement of the estate of such deceased member. A conveyance of allotted restricted Indian lands, made in violation of a federal statute authorizing the alienation of such lands, is against public policy, and absolutely void, and in no manner can any right, title or interest in such lands be acquired under such conveyance."

In the case of Goodrum v. Buffalo, 162 Fed. 817, 89 C. C. A. 525, it was said:

"Notwithstanding the general rule that a judgment between parties sui juris, where the court has jurisdiction over the subject-matter and the parties, is conclusive of every question of fact and law in contestation, and cannot be attacked in a collateral proceeding, a judgment rendered by the United States Court in the Indian Territory, under stipulation between a Quapaw Indian and a white man, submitting, under the provisions of local law, for decision the question of the power of such Indian allottee, or his heir, to convey his or her allotment within the 25-year period of limitation under Act Cong. March 2, 1895, c. 188, 28 Stat. 907, adjudging the validity of such conveyance, held to be invalid, when interposed to defeat the action of ejectment by the Indian heir against the prevailing party in such proceeding."

In the case of Bowling v. United States, 233 U. S. 528, it was there shown that certain Indian heirs contracted to sell their allotted, restricted lands, and filed a suit to enforce such contract, in which action a judgment was entered in favor of the Indians, pursuant to which they executed their deed. The United States, on behalf of the Indians, brought an action to set aside the conveyance so made, and it was said in the above entitled action:

"The authority of the United States to enforce a restraint lawfully created cannot be impaired by any action without its consent.

"If, therefore, the conveyance by the allottee's heirs, in the present case, would otherwise have been subject to cancellation, it was not saved by reason of the judgment entered in their suit against the purchaser."

This court in the case of Brink v. Canfield, 78 Okla. 189, 187 Pac. 223, in the body of the opinion, in discussing the effect of the dismissal, with prejudice, of a suit by a full-blood Creek Indian to establish his right and title to certain inherited lands, said:

"The inquiry is readily answered by the

decisions of this court in Jefferson v. Winkler, 26 Okla. 653, 110 Pac. 755; Bell v. Fitzpatrick, 53 Okla. 574, 157 Pac. 334; and by other cases. And by the Circuit Court of Appeals in Goodrum v. Buffalo, 162 Fed. 817, 89 C. C. A. 525; and Bowling v. United States, 191 Fed. 19, 111 C. C. A. 561, the latter case being affirmed on appeal by the Supreme Court of the United States in 233 U. S. 528, 34 Sup. Ct. 659, 58 L. Ed. 1080. At the time Jack's suit was instituted, there was but one way in which he could alienate his title to the lands which he had inherited, and that was by a deed of conveyance, approved by the court having jurisdiction of the setttlement of the estate of the deceased allottee. 35 Stat. at L. 312, c. 190. While the restrictions had been removed from the lands in the sense that Jack had the power of alienation, it could only be consummated and made effectual when approved as pointed out in the foregoing act of Congress. Without the making of a deed, and its approval, no judgment could be rendered, regardless of the character of the suit or the issues joined, whereby Jack's title could be divested, he being a full-blood Creek Indian, and the lands being lands allotted to his kinsman, through whom, upon the death of succeeding heirs, his title was derived. Nor could the judgment be given effect in a subsequent legal proceeding, either as an estoppel or as constituting a former adjudication of his title. In other words, in so far as the title to such lands was concerned, the judgment was a nullity, because of a want of power in the court to make it. Any other view would mean the circumvention of the statute prescribing the manner in which such lands may be alienated, and make nugatory the acts of Congress prescribing the manner and terms of conveyances of allotted lands inherited by full-blood Indians."

"The district courts of this state are without jurisdiction to enter a valid judgment divesting an Indian minor allottee of title to his allotted lands by entering a decree quieting title in a party asserting title to such lands under void conveyances executed in violation of a federal statute prescribing the manner by which title may be acquired to such lands. The title to such lands may be acquired only under regular probate sale as provided for by law." (4th Syllabus) Tidal Oil Co. v. Flanagan, 87 Okla. 231, 209 Pac. 729.

Further litigation and questions involving the property litigated in Tidal Oil Co. v. Flanagan, supra, were involved and discussed in the cases of Miller, Adm'r, v. Tidal Oil Co., 106 Okla. 212, 233 Pac. 696, and Miller v. Tidal Oil Co., 130 Okla. 133, 265 Pac. 648.

In the syllabus of those cases, it was said:

"A conveyance of allotted restricted Indian lands made in violation of a federal statute authorizing the alienation of such lands is against public policy and absolutely void, and in no manner can any right, title, or interest in such lands be acquired under such a conveyance." 106 Okla. 212, 233 Pac. 696.

"A judgment against a minor Creek freedman, quieting title to premises constituting his allotment in favor of grantees claiming title under a deed executed by such minor, is void, and such judgment cannot be validated by an order of the same court denying a motion to vacate the same, even though such minor has reached his majority at the time such motion is filed and order made, and neither the void judgment nor the order denying the motion to vacate can operate as an estoppel under a plea of res adjudicata in a subsequent action between the same parties." Okla. App. Ct. Rep., vol. 45, p. 258.

Other decisions and holdings of this court which bear upon the case here will be found in the following cases: Brown v. Minshall, 83 Okla. 98, 202 Pac. 1037; Merchants' & Planters' Nat. Bank v. Ford, 93 Okla. 289, 220 Pac. 833; Bilby v. Harrison, 100 Okla. 67, 227 Pac. 407; Balthrop v. Clark, Adm'r, 94 Okla. 294, 222 Pac. 520; Eysenbach v. Naharkey, 110 Okla. 207, 236 Pac. 619.

This court, in the case of Welch v. Commercial National Bank of Muskogee, 90 Okla. 221, 217 Pac. 476, held that judgment in an action to quiet title to restricted Indian lands was res judicata and a bar to a later suit, but such holding in that case, and those following it, was expressly overruled in the case of Southwestern Surety Ins. Co. v. Farriss, 118 Okla. 188, 247 Pac. 392, in which latter case it was held that a judgment of a district court, decreeing a lien by way of subrogation against the lands of an Indian minor, was void, and in referring thereto the court said:

"Being void, such judgment cannot thereafter be validated by an order of the same court denying a motion or petition to vacate same, and neither the void judgment nor the order denying the petition to vacate can operate as an estoppel under a plea of res adjudicata in a subsequent action between the same parties. The lack of judicial power to decree the lien inheres in every subsequent proceeding by which color of authority is sought to be imparted to the void portion of said judgment."

Under the facts in the instant case, in view of the decisions of the federal courts and of this state, we are of the opinion that the judgment of the trial court was correct. Therefore, the judgment of the district court is affirmed.

TEEHEE, REID, FOSTER, and DIFFEN-DAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See 31 C. J. p. 516, §79.